UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
GOODWIN UNIVERSITY, INC.         :   CIVIL ACTION NO.
                                 :
      Plaintiff,                 :
                                 :
V.                               :
                                 :
DANIEL WILLIAMSON,               :
                                 :   AUGUST 18, 2022
      Defendant.                 :
------------------------------------------------------

## COMPLAINT AND JURY DEMAND

Plaintiff Goodwin University, Inc. ("Goodwin"), as and for its Complaint against defendant Daniel Williamson ("Williamson"), alleges as follows:

### THE PARTIES

1.    Plaintiff Goodwin is a Connecticut not-for-profit higher education institution with its main campus located at One Riverside Drive in East Hartford, Connecticut.

2.    Until recently, defendant Williamson was Director of Enrollment at Goodwin and resides at 193 Amherst Street, New Britain, Connecticut.

### JURISDICTION AND VENUE

3.    Goodwin seeks preliminary and permanent injunctive and equitable relief under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

4.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 on the grounds that this civil action arises under the laws of the United States.

1

3672509

5. This Court has personal jurisdiction over Williamson on the grounds that he resides within the district.

6. Venue is proper in this district because the events or omissions giving rise to the claims occurred in this district.

## FACTS COMMON TO ALL CLAIMS

7. Williamson began working at Goodwin in 2004, at which time he signed an Acknowledgment of Receipt and Understanding stating that he had received a copy of the Information Handbook for Employees of Goodwin College and agreeing that he would comply with all its policies and procedures.

8. More recently and up until July 22, 2022, Williamson worked as one of Goodwin's Directors of Enrollment. He was responsible for supervision of the Admissions Reservation Center (Call Center), Applicant Advising staff, and front desk receptionists. In the course of his employment, he had unrestricted access to all elements of prospective student data, including, when provided, personally identifiable information such as first and last name, social security number, telephone numbers, home addresses, and email addresses ("Recruitment Data").

9. The Recruitment Data is vital to Goodwin's efforts to recruit students, and Goodwin expends considerable resources to compile and continually update the Recruitment Data. The Recruitment Data contains contact information for prospective students who have expressed an interest in attending Goodwin or who Goodwin believes are candidates for enrollment at Goodwin based on a variety of demographics, background, and other information. Goodwin utilizes the Recruitment Data to contact prospective students through multiple outreach methods to encourage their applications to and enrollment at Goodwin. Needless to say,

Goodwin's mission is to educate students, and, as a result, students are Goodwin's lifeblood. Over 95% of Goodwin's student body derives from its utilization of the Recruitment Data.

10. Consequently, the Recruitment Data is invaluable to Goodwin, not only as a tool for enrollment of students but also as a tool to enable Goodwin to compete for these students with other colleges and universities. Moreover, the Recruitment Data has independent economic value from not being generally known to, and not being readily ascertainable through proper means by, competing colleges and universities. Goodwin takes vigorous steps to safeguard the Recruitment Data and keep it secret by restricting its accessibility to only certain staff through the combination of user name and passcode. Thus, Goodwin considers the Recruitment Data to be its trade secret.

11. On July 21, 2022, Williamson gave notice that he would be terminating his employment at Goodwin. He stated that he would be joining the admissions staff at Arizona College of Nursing, starting as the new Executive Director of Enrollment Services. His last day of work at Goodwin was July 22, 2022. On information and belief, he has already started working at Arizona College of Nursing. Arizona College of Nursing is seeking licensure in Connecticut to open a branch three miles away from Goodwin at space it recently leased at 99 East River Drive in East Hartford, Connecticut.

12. Nursing is one of the core programs at Goodwin.

13. After Williamson announced he would be leaving to join Arizona College of Nursing as its Executive Director of Enrollment Services, Goodwin's independent data systems consultant, West Mountain Data Consulting, LLC, conducted, at Goodwin's request, a search of Williamson's activities with respect to accessing and downloading files and data from Goodwin's Student Information System, which contains information, including personally

identifiable information, predominantly concerning students and prospective students who reside in Connecticut but also those who reside in other states, such as Massachusetts and New York.

14. West Mountain Data Consulting found that, since June 2022, Williamson accessed and downloaded onto his desktop computer Recruitment Data on the Student Information System containing leads to approximately 12,000 local prospective Nursing and Health Sciences students, particularly on June 30, 2022, when he accessed two reports containing data concerning such prospective students from January 1, 2020 to the present. He accessed four similar reports on July 1, 2022 that contain current leads for prospective students.

15. Williamson had no need to access such reports for anything related to Goodwin work he was doing in June or July. On the other hand, these reports would be invaluable to a new nursing school starting up in Connecticut because they provide an enormous directory for contacting recent student leads with high potential for enrollment. Furthermore, while Williamson's admissions duties covered recruitment of students for any of Goodwin's academic programs, the data he accessed contained leads to an overwhelming amount of prospective Nursing and Health Sciences students.

16. Additionally, after Williamson left Goodwin, Goodwin learned that he had downloaded onto his desktop computer a number of files and reports from Goodwin's computer system and network on July 21, 2022, his last day in the office.

17. On July 27, 2022, Williamson attended an exit interview with Goodwin's Human Resources Director. In that interview, Williamson admitted that he had downloaded certain files onto an external USB drive but claimed that he had downloaded only personal information, such as his résumé. The Human Resources Director asked him to return the external USB drive, and

he said he would do so, but the next day he reneged and left a voicemail message stating that he would not return the USB drive.

18. Eventually, however, he returned the USB drive on July 30, 2022.

19. An outside forensic computer consultant accessed that USB drive and found Goodwin data and reports that provide a detailed road map for setting up and operating an Admissions Office.

**20.** One report Williamson downloaded onto the USB drive, called "Presidential Daily Briefing," is distributed to senior administration and Admissions Office leadership every weekday. It contains numerous data and is a tool and resource instrumental in running the Admissions Office on a daily basis. Another daily report provides information on prospective students who have asked for their personal information to be sent to Goodwin from outside sources.

21. Goodwin views these reports and other information Williamson downloaded onto the external USB drive (the "Admissions Office Reports") as its trade secrets because they have independent economic value from not being generally known to, and not being readily ascertainable through proper means by, competing colleges and universities, which do not operate admissions offices in the same manner as Goodwin. Goodwin takes vigorous steps to safeguard the Admissions Office Reports and keep them secret by restricting their accessibility to only certain staff through a dedicated email distribution list. Thus, Goodwin considers the Admissions Office Reports to be its trade secret.

22. The Recruitment Data that Williamson accessed on at least June 30 and July 1, 2022 and the Admissions Office Reports he accessed and downloaded onto an external USB drive on July 21, 2022 would be the ideal information that a nursing school such as Arizona

College of Nursing would need to recruit Nursing and Health Sciences students in the Greater Hartford area and to set up and operate an admissions office. Obtaining this information would not only save Arizona College of Nursing hundreds of thousands of dollars, if not millions of dollars, but also provide it with an enormous head start in setting up and operating an admissions office and filling the ranks of its first class at the expense of and to the detriment of Goodwin.

23. Williamson was not authorized to access the Recruitment Data or the Admissions Office Reports for any purpose unrelated to his duties at Goodwin and was not authorized to download the Admissions Office Reports onto an external USB drive and remove it from Goodwin's premises, especially as he was leaving to work for a competitor.

24. Section 7 of the Goodwin Staff Handbook, which Williamson agreed to comply with at the start of his employment, provides, in part, that "[w]hen separating from Goodwin University, you must return any and all confidential information belonging to the University and may not disclose any of this confidential information in any form or manner." Removing the Admissions Office Reports on an external USB drive violated that requirement.

25. Moreover, in light of Williamson's removal of Admissions Office Reports via the USB drive, his lies about what he downloaded onto the USB drive, and the fact that he had no legitimate purpose in accessing the Recruitment Data on June 30 and July 1, 2022, there is strong reason to believe that he removed Recruitment Data in a similar or different fashion, also in violation of the Staff Handbook.

**FIRST CLAIM FOR RELIEF** (Federal Computer Fraud and Abuse Act)

26. The preceding paragraphs are repeated and realleged.

27. Goodwin's computer network, desktop computers, and Student Information System database are "computers" as defined in 18 U.S.C. § 1030(e)(1).

28. Goodwin's computer network, desktop computers, and Student Information System database are "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in and affect interstate commerce or communication.

29. Williamson intentionally accessed Goodwin's protected computers for the purpose of downloading the Recruitment Data and Admissions Office Reports in a manner that exceeded his authorization and thereby obtained the Recruitment Data (on information and belief) and Admissions Office Reports from Goodwin's protected computers without authorization for his own benefit and for the purpose of benefiting his new employer, Arizona College of Nursing, all to Goodwin's detriment in violation of 18 U.S.C. § 1030(a)(2)(C).

30. Williamson's access of Goodwin's protected computers for his own and Arizona College of Nursing's benefit exceeded his authorization to access Goodwin's protected computers and has damaged and is threatening to damage Goodwin in an amount exceeding $5,000.

31. As a result, Williamson's conduct involves factor (I) of 18 U.S.C. § 1030(c)(4)(A)(i), and he is liable to Goodwin under 18 U.S.C. § 1030(g), the federal Computer Fraud and Abuse Act.

32. As a result of Williamson's actual and threatened conduct, Goodwin has been and will continue to be irreparably harmed unless the Court issues equitable relief.

**SECOND CLAIM FOR RELIEF** (Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)

33. The preceding paragraphs are repeated and realleged.

34. The Recruitment Data and Admissions Office Reports are Goodwin's "trade secrets," within the meaning of the definition of that term in the Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

35. The Recruitment Data is an exhaustive compilation of information and leads concerning prospective students that is invaluable to Goodwin's efforts to recruit students, particularly Nursing and Health Sciences students. The Admissions Office Reports are certain documents, data, and reports that provide a detailed road map for setting up and operating an Admissions Office.

36. Goodwin has taken reasonable measures to protect and keep secret the Recruitment Data and Admissions Office Reports, which have independent economic value from not being generally known or ascertainable through proper means within the community of colleges and universities competing for students, particularly Nursing and Health Sciences students. Access to the Recruitment Data is restricted to only certain staff through the combination of user name and passcode, and access to the Admissions Office Reports is restricted to only certain staff through a dedicated email distribution list.

37. Williamson was not permitted to access and download the Recruitment Data and Admissions Office Reports before leaving Goodwin for his or Arizona College of Nursing's use after he left Goodwin.

38. Nevertheless, in violation of 18 U.S.C. § 1836(b), Williamson misappropriated the Recruitment Data (on information and belief) and Admissions Office Reports by downloading them in excess of his authorization.

39. Williamson's possession and use of the Recruitment Data (on information and belief) and Admissions Office Reports were and continue to be without Goodwin's consent, and Williamson used improper means to acquire the Recruitment Data (on information and belief) and Admissions Office Reports by secretly downloading them while still employed by Goodwin.

40. Williamson knew or had reason to know that his acquisition, possession, and use of the Recruitment Data (on information and belief) and Admissions Office Reports for his or Arizona College of Nursing's use after he left Goodwin were wrongful.

41. Williamson's misappropriation of the Recruitment Data (on information and belief) and Admissions Office Reports was "improper," within the meaning of 18 U.S.C. § 1839(6), because he had no lawful right to download the Recruitment Data and Admissions Office Reports, to remove the Admissions Office Reports from Goodwin, and to refuse to return all copies, thus breaching his duty to maintain the secrecy of the Admissions Office Reports, all of which constituted a violation of the Goodwin Staff Handbook.  Moreover, Williamson falsely denied downloading the Admissions Office Reports onto a USB drive.

42. Williamson's misappropriation of the Recruitment Data (on information and belief) and Admissions Office Reports was willful and malicious.

43. As a result of Williamson's actual and threatened misappropriation and improper continued use of the Recruitment Data (on information and belief) and Admissions Office Reports, Goodwin has been and will continue to be irreparably harmed unless the Court issues equitable relief.

## **TRIAL BY JURY**

Goodwin demands trial by jury on all claims and issues triable by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Goodwin University prays for:

1.  Preliminary and permanent equitable relief, pursuant to Fed. R. Civ. P. 65, 18 U.S.C. § 1030(g), 18 U.S.C. § 1836(b)(3)(A), and the Court's equitable powers:

(a) enjoining and prohibiting Williamson and all persons in active concert or participation with him, including Arizona College of Nursing, from possessing, using, continuing to use, selling, or attempting to sell the Recruitment Data, the Admissions Office Reports, or any other Goodwin materials Williamson may have copied from Goodwin's computer system or any system or other electronic media derived from, based on, or copied from such materials;

(b) directing Williamson and all other persons who are in active concert or participation with him, including Arizona College of Nursing, to return to Goodwin the Recruitment Data, the Admissions Office Reports, and any other Goodwin materials Williamson may have copied from Goodwin's computer system and any copies thereof in any form, including an external USB drive, and to destroy any other copies of the Recruitment Data, the Admissions Office Reports, and any other Goodwin materials Williamson may have copied from Goodwin's computer system on any device in their possession; and

(c) directing Williamson and all other persons who are in active concert or participation with him, including Arizona College of Nursing, to deliver to Goodwin University or its forensic computer consultant all computers, electronic devices, data storage devices, external devices, computer hardware, smart phones, PDAs, software, USB drives, zip drives, hard drives, thumb drives, circuit boards, memory chips, tapes, floppy discs, CDs, and any other electronic equipment or storage devices, data that is otherwise accessible through computer and/or other information storage or retrieval systems computers in his or its possession, custody, or control

for inspection to determine whether they are in possession, custody, or control of any Recruitment Data, Admissions Office Reports, or any other materials from Goodwin's computer system.

    2.    Reasonable attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

    3.    Interest.

    4.    Costs.

    5.    Such other and further relief as the Court deems just and proper.

                            PLAINTIFF,
                              GOODWIN UNIVERSITY, INC.

                        By:   /s/ Richard S. Order
                            Richard S. Order, Esq. (ct02761)
                            Robert M. DeCrescenzo, Esq. (ct03469)
                            UPDIKE, KELLY & SPELLACY, P.C.
                            225 Asylum Street, 20th Floor
                            Hartford, CT 06103
                            Phone: (860) 548-2600
                            Fax: (860) 548-2680
                            Email: rorder@uks.com
                            Email: rdecrescenzo@uks.com